IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| STACY SHIFFLETT, ) | |
| ) | Civil Action No. 7:06-CV-00406 |
| Petitioner, ) | |
| ) | **AMENDED 2255 MEMORANDUM** |
| v. ) | **OPINION** |
| ) | |
| UNITED STATES OF AMERICA, ) | By: Hon. James C. Turk |
| ) | |
| Respondent. ) | Senior United States District Judge |
| ) | |

This matter is presently before the court on Respondent United States of America's Motion to Dismiss (Docket No. 13). Petitioner Stacy Shifflett ("Shifflett"), a federal inmate initially proceeding pro se, brought this action pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("§2255 Motion") (Docket No. 1). Following the United States' filing of its Motion to Dismiss, the court appointed Shifflett legal counsel and held an evidentiary hearing on October 23, 2008. The court then gave the parties seven days from the date of that hearing to submit additional argument. Based on the existing court record, memoranda submitted by the parties, and testimony presented at the evidentiary hearing, the court concludes that there is insufficient evidence to sustain Shifflett's claims of ineffective assistance of counsel. Accordingly, the United States' Motion to Dismiss (Docket No. 13) must be granted.

I.

Shifflett, along with multiple co-defendants, was indicted for conspiracy to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and conspiracy to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Shifflett's husband, Scott Shifflett, was one of the indicted co-defendants. The government extended a plea offer to Shifflett and her husband, which included the forfeiture of

real property. Both of the Shiffletts rejected the offer, deciding instead to proceed to trial with one other remaining co-defendant.

Following the parties' presentation of evidence at trial, a jury returned a guilty verdict against all three of the co-defendants, and the court sentenced Shifflett to 188 months of incarceration.[1] The jury further found that Shifflett and her husband were jointly liable for a money judgment in the sum of $150,000. On September 30, 2003, the parties came to an agreement on the forfeiture, and the court issued a preliminary order on January 16, 2004. On May 26, 2004, pursuant to 21 U.S.C. § 853(p), the court issued a final order of forfeiture providing for the forfeiture of certain real property as substitute assets in satisfaction of the $150,000 monetary judgment. On November 3, 2004, the court issued an order providing for the forfeiture of two real properties owned by Shifflett and her husband, which they forfeited as substitute assets to satisfy the $150,000 money judgment. The order also directed that any net proceeds realized in excess of the $150,000 money judgment be returned to Stacy Shifflett and/or her designee. The properties sold for a total sum of $186,572.56.

Shifflett now contends in her § 2255 Motion that she received constitutionally ineffective assistance of counsel in preparation of and during her trial.[2] In particular, Shifflett claims that her court-appointed trial counsel, Mr. Roland Santos ("Santos"), failed to advise her properly about potential plea options and the likely outcome of a trial. According to Shifflett, Santos simply advised her to "not take the deal" offered by the United States because "she had a good case" and there was a "good chance" that she would prevail at trial. (Pet'r Am. Mem. of Facts

---

[1] The court later reduced this sentence to 132 months imprisonment, based on the United States Supreme Court's decision in U.S. v. Booker, 543 U.S. 220 (2005).

[2] Shifflett's original § 2255 Motion listed four grounds upon which she sought relief. By order entered June 13, 2007 (Docket No. 20), this court dismissed two of those claims relating to the forfeiture proceedings (Grounds Three and Four) for lack of subject matter jurisdiction.

2

and Law at 5). Shifflett also claims that Santos was constitutionally ineffective because he was inexperienced in federal trials. As evidence of this inexperience, Shifflett alleges that Santos failed to investigate the case adequately, failed to "interview or contact [potential] witnesses to determine what facts or testimony they may have had to offer in presenting a defense," (Pet'r Am. Mem. of Facts and Law at 5), "refused to let [Shifflett] take the stand in [her] own defense," (Pet'r Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct at 6), and failed to "present any defense on [her] behalf." (Pet'r Am. Mem. of Facts and Law at 5).

In a recent filing entitled "Memorandum in Support of Defendant" ("Memorandum in Support" or "Memorandum"), Shifflett asserts two additional claims of ineffective assistance of counsel not contained in her initial § 2255 Motion. First, Shifflett alleges that Santos improperly "commingled his advice" with Roy D. Bradley (Scott Shifflett's trial attorney) ("Bradley") and "allowed his representation to become too closely aligned with defenses of Scott Shifflett." (Pet'r Mem. in Support at 5). Shifflett claims this close alignment resulted in a de-facto joint representation, and this joint representation created a conflict of interest that is sufficient for this court to presume a Sixth Amendment violation. In the alternative, Shifflett also claims that she suffered actual prejudice as a result of the de-facto joint representation. According to Shifflett, Santos' close alignment with Bradley enabled Scott Shifflett to unduly influence Shifflett's own decisions, and this influence prevented Shifflett from availing herself of potential plea offers and/or "pursu[ing] her own defenses," including, but not limited to, testifying against her husband and about the couple's history of spousal abuse. (Pet'r Mem. in Support at 3).

In an affidavit filed with the court, Santos disputes these allegations. Santos states that he "duly informed the defendant of the plea offer[s] [extended] by the United States," but Shifflett "rejected said plea offer[s]" and "wished to go to trial" instead. (Resp't Motion to Dismiss at

Attach. (Aff. of Roland M.L. Santos)). Santos further claims that Shifflett made these decisions even after he "urged [her] to accept any agreement that would lessen her sentence, since the evidence was overwhelmingly against her." (Resp't Motion to Dismiss at Attach. (Aff. of Roland M.L. Santos)). As to the inexperience claims, Santos argues that he had "ample federal courtroom experience" prior to his representation of Shifflett, including one federal murder case. (Resp't Motion to Dismiss at Attach. (Aff. of Roland M.L. Santos)). Based on this experience, and after informing Shifflett of her right not to testify, Santos claims that he urged Shifflett to take the stand as "she was the only witness that could testify on her behalf" and "tactically, only her testimony could conceivably avert a certain conviction." (Resp't Motion to Dismiss at Attach. (Aff. of Roland M.L. Santos)). According to Santos, Shifflett practiced her testimony with him "extensively prior to trial," but just before Santos called her to the stand, "she told [him] that she did not want to testify, to [his] amazement." (Resp't Motion to Dismiss at Attach. (Aff. of Roland M.L. Santos)).

The United States relies on Santos' account of the underlying events to support its Motion to Dismiss. Santos' affidavit, however, varies markedly from Shifflett's sworn allegations. Therefore, the court held an evidentiary hearing on October 23, 2008, to resolve the factual disputes and to evaluate the credibility of various witnesses. At that hearing, the court heard testimony from Shifflett, Santos, Scott Shifflett, Bradley, and Sandra Ford (Shifflett's sister). The court also heard argument from the parties' respective counsel and granted each side an additional week to submit further argument or authority.

## II.

Before reaching the merits of Shifflett's § 2255 Motion, the court must first determine whether Shifflett's Memorandum in Support should be included as part of the court's analysis.

Shifflett only recently filed the Memorandum in Support on October 30, 2008, more than two years after she filed her original habeas petition (July 5, 2006) and well past the one-year limitation imposed by 28 U.S.C. § 2255(f) (October 6, 2005).[3] As a result of this delay, the court may consider the Memorandum in Support as part of its § 2255 analysis only if the document provides additional evidence in support of Shifflett's preexisting claims or if it properly amends those claims according to the Federal Rules. See Fed. R. Civ. P. 15 (2008).

After reviewing the Memorandum in Support, the court finds that the document does not provide any additional evidence in support of Shifflett's preexisting habeas claims. To the contrary, the document seeks to alter those claims or to replace them entirely. For example, Shifflett's original § 2255 Motion alleges two claims of ineffective assistance of counsel: first, that Santos failed to advise Shifflett properly about her plea options and the likely outcome of a trial, and second, that Santos had insufficient federal trial experience, as evidenced by his decisions before and during trial. Shifflett explained those claims in more detail in her "Memorandum of Law Brief in Support of Motion Under 28 U.S.C. § 2255" (Docket No. 9), in

---

[3] As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Paragraph (f) of § 2255 reads as follows:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of– (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f) (2008). If a defendant appeals the trial court's judgment, the conviction becomes final ninety (90) days from the date of the United States Court of Appeals for the Fourth Circuit's judgment affirming the conviction or on the date when the United States Supreme Court makes its final decision in any certiorari proceedings the defendant may bring. See Clay v. United States, 537 U.S. 522, 524-25 (2003). Here, Shifflett did not appeal the court's amended judgment following her successful appeal pursuant to U.S. v. Booker, 543 U.S. 220 (2005), thus the judgement became final on October 6, 2004, ten business days after its issuance, when Shifflett's opportunity to pursue an appeal expired. Fed. R. App. P. 4(1)(A)(I). Shifflett's one-year period to file a § 2255 motion began to run on that date and ended October 6, 2005.

5
Case 7:06-cv-00406-JCT-mfu  Document 43  Filed 01/22/09  Page 5 of 16  Pageid#: 253

her "Amended Memorandum of Facts and Law in Support of Petitioner's 28 U.S.C. Section 2255 Motion" ("Amended Memorandum of Facts and Law") (Docket No. 16), and in her Motion for Summary Judgment (Docket No. 26). Nowhere in these filings, however, does Shifflett argue—or even attempt to argue—the gravamen of her Memorandum in Support, i.e., ineffective assistance of counsel due to conflict of interest. In fact, Shifflett's only mention of a potential conflict of interest occurs in the context of improper forfeiture allegations, claims which this court dismissed for lack of subject matter jurisdiction.

Pursuant to Fourth Circuit law, courts must liberally construe pro se pleadings "however unskillfully pleaded." Noble v. Barnett, 24 F.3d 582, 587 n.6 (4th Cir. 1994) (citing Haines v. Kerner, 404 U.S. 519 (1972); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977)). Despite this generous standard, however, this court cannot faithfully interpret Shifflett's original ineffective assistance of counsel claims as encompassing arguments of conflict of interest or de-facto joint representation. For that reason, and because the Memorandum in Support adds nothing factual to any of Shifflett's preexisting habeas claims, the court will not accept it for its stated purpose of "presenting authority that [Shifflett] received ineffective assistance of counsel." (Pet'r Mem. in Support at 1). Rather, the court accepts the Memorandum for its true purpose, to substitute or alter the preexisting claims, and will analyze it accordingly as a Motion to Amend.

In deciding whether to grant the Motion to Amend, the court begins its analysis with the general proposition that a habeas petitioner may amend or supplement her pleadings as provided for by the Federal Rules of Civil Procedure. 28 U.S.C. § 2242. The Civil Rule governing amendments, Federal Rule of Civil Procedure 15, allows petitioners to amend their pleadings any time "with leave of court." See Fed. R. Civ. P. 15(a) (2008). Once a statute of limitations has expired, however, a petitioner may amend her pleadings only if the amendments "relate back" to

6

the date of the original pleading. Fed. R. Civ. P. 15(c) (2008). An amended pleading "relate[s] back" if the original and amended pleadings "ar[i]se out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Id.

In Mayle v. Felix, 545 U.S. 644 (2005), the United States Supreme Court explained Rule 15(c)'s "relation back" standard in more detail. At issue in Mayle was a circuit split involving the question of whether a habeas petitioner could invoke Rule 15(c), after the expiration of the AEDPA's one-year statute of limitations, to amend a timely petition for habeas corpus by adding a claim asserting a different error than one alleged in the original petition. Id. at 649-50, 653-54. In ruling that this type of amendment was proper only under limited circumstances, the Court held that "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type of those the original pleading set forth." Id. at 650. Instead, the original and amended claims must be "tied to a common core of operative facts" for "relation back [to] be in order." Id. at 664. For example, "relation back is ordinarily allowed 'when the new claim is based on the same facts as the original pleading and only changes legal theory.'" Id. at 664 n. 7 (citing 3 J. Moore, et al., Moore's Federal Practice § 15.19[2], p. 15-82 (3d ed. 2004)).

In coming to this conclusion, the Supreme Court specifically rejected the argument that a habeas petitioner's initial and amended claims arise from the same "conduct, transaction, or occurrence" merely because the events giving rise to the claims took place during the same time period. Id. at 661-62; see also U.S. v. Pittman, 209 F.3d 314, 318 (4th Cir. 2000) ("The fact that amended claims arises from the same trial and sentencing proceeding as the original motion does not mean that the amended claims relate back for purposes of Rule 15(c)."); Hebner v. McGrath, 545 F.3d 1133, (9th Cir. 2008) ("It is not enough that the new argument pertains to the same

trial, conviction, or sentence."). The Court reasoned that this sort of approach "views 'occurrence' at too high a level of generality," id. at 661 (citing U.S. v. Pittman, 209 F.3d at 318), and if amended claims could be asserted simply for that reason alone, the "AEDPA's limitation period would have slim significance." Id. at 662.

In the instant case, the court finds that the amended claims of ineffective assistance of counsel contained in Shifflett's Motion in Support do not relate back to her initial § 2255 claims. In coming to this conclusion, the court finds it particularly significant that Shifflett's amended claims rely on facts that not only "differ in both time and type" as those set forth in her original pleadings, id. at 650 (emphasis added), but facts that directly contradict the facts that she originally asserted. For example, in the initial § 2255 Motion, Shifflett contends that she rejected the plea bargain offered by the United States because Santos advised her to "not take the deal" because "she had a good case." (Pet'r Am. Mem. of Facts and Law at 5, emphasis added). In the Memorandum in Support, however, Shifflett claims oppositely that "[a]gainst the advice of her counsel, Roland Santos, [she] rejected [the] plea agreement." (Pet'r Mem. in Support at 3, emphasis added). Similarly, while Shifflett initially contended in her § 2255 Motion that Santos "refused to let [Shifflett] take the stand in [her] own defense" (Pet'r Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct at 6, emphasis added), she asserts in her amended claims that she decided not to take the stand in her own defense because "she did not feel safe . . . testify[ing] against her Husband and as to the spousal abuse." (Memorandum in Support at 3). Regardless of which of the two factual renditions is actually true, it is clear that the initial and amended claims are not "tied to a common core of operative facts." Mayle 545 U.S. at 664. Rather, the two sets of claims rely on differing—even contradicting—sets of facts, and for that reason, it would be erroneous for the court to conclude that the initial and amended claims arise

from the same "conduct, transaction, or occurrence." Fed. R. Civ. P. 15(c) (2008). The court, therefore, denies Shifflett's Motion to Amend and will limit its analysis to the initial claims.

### III.

To evaluate the remaining claims of ineffective assistance of counsel, the court relies on the standard set forth by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). In <u>Strickland,</u> the Court held that a finding of ineffective assistance of counsel requires a two-prong showing, and a habeas petitioner bears the burden of persuasion for both prongs. <u>Id.</u> at 687. To satisfy the first prong, a habeas petitioner must show that her counsel's performance was deficient. <u>Id.</u> "Deficient performance" is not merely below average; rather, counsel's actions must fall below objective standards of reasonableness. <u>Id.</u> at 687, 688. In assessing an attorney's performance, judicial scrutiny must be "highly deferential" to tactical decisions, and the court must filter from its analysis the distorting effects of hindsight. <u>Id.</u> at 689. The first prong of <u>Strickland</u> necessitates a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u>

Under the second <u>Strickland</u> prong, a petitioner must show that prejudice resulted from counsel's deficient performance. <u>Id.</u> at 692. If counsel's actions do not fall below an objective standard of reasonableness, however, the court need not undertake this consideration. <u>Bell v. Evatt,</u> 72 F.3d 421, 430 (4th Cir. 1995). To establish prejudice, a petitioner must show that there is a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." <u>Strickland,</u> 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine the confidence of the outcome." <u>Id.</u>

In the instant case, Shifflett alleges two grounds to support a finding of ineffective assistance of counsel. The court will consider each of these claims in turn.

## A. Ineffective Assistance of Counsel Ground One: Failure to Advise Properly Regarding the United States' Plea Agreements

As her first ground for relief, Shifflett claims that Santos rendered ineffective assistance of counsel by failing to advise her properly regarding potential plea options. The United States initially extended a plea agreement to Shifflett in July 2002, (Resp't Ex. 3), and it re-issued the same offer one year later. (Resp't Ex. 1). The plea agreement obligated Shifflett to plead guilty to two counts of the indictment (conspiracy and forfeiture) and to provide truthful information concerning her part in the drug trafficking conspiracy. In return, the United States agreed to stipulate to a certain drug weight and to recommend any additional sentence reductions as appropriate. The United States also offered the possibility of a 5K Substantial Assistance Motion if Shifflett testified at trial as a government witness.

Shifflett rejected the plea agreement in 2002 and again in 2003. In her § 2255 Motion and Amended Memorandum of Facts and Law, Shifflett claims that she made these decisions based on Santos' advice to "not take the deal." (Pet'r Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct at 5; Pet'r Am. Mem. of Facts and Law at 4,5). According to Shifflett, Santos never informed her about the Federal Sentencing Guidelines or the range of sentences that was possible under the terms of the plea agreement and/or after a conviction at trial. Rather, Santos simply told her that she had a "good chance of winning," and based on this advice, Shifflett proceeded to trial. (Pet'r Am. Mem. of Facts and Law at 5).

Based on a review of the existing court record and testimony presented at the evidentiary hearing, the court finds that Shifflett has failed to satisfy her burden under <u>Strickland</u> as to this claim. There is simply no credible evidence to support Shifflett's allegations[4] or to prove that

---

[4] In fact, while testifying under oath during the evidentiary hearing, Shifflett directly contradicted her original claim. Shifflett admitted that Santos did <u>not</u> advise her to "not take the deal" offered by the United States, but rather, she rejected the plea agreement based on the advice of her husband's attorney, Bradley.

10
Case 7:06-cv-00406-JCT-mfu  Document 43  Filed 01/22/09  Page 10 of 16  Pageid#: 258

Santos' actions fell "below objective standards of reasonableness." Strickland, 466 U.S. at 687. To the contrary, the record is replete with documented evidence that Santos fulfilled his responsibilities as required by the Fourth Circuit's decision in Jones v. Murray, 947 F.2d 1106, 1109-1111 (4th Cir. 1991).

In Jones, the Fourth Circuit ruled on a habeas petitioner's claim that his "trial counsel rendered ineffective assistance by failing to advise him properly with regard to an offered plea agreement." Id. at 1109. As part of its analysis, the Fourth Circuit reviewed the promulgated standards of the American Bar Association. Id. Those standards, which have been "recognized by the Supreme Court as a 'guide to determining what is reasonable,'" id. (citing Strickland, 466 U.S. at 688), read as follows:

> (a) Defense counsel should conclude a plea agreement only with the consent of the defendant, and should ensure that the decision whether to enter a plea of guilty or nolo contendere is ultimately made by the defendant.
>
> (b) To aid the defendant in reaching a decision, defense counsel, after appropriate investigation, should advise the client of the alternatives available and of considerations deemed important by defense counsel or the defendant in reaching a decision.

Id. (citing III American Bar Association Standards for Criminal Justice, Standard 14-3.2 (2d ed. 1986 Supp.)). The court then denied the claim, stating that the trial attorney's actions did not violate "professional standards." Id. In coming to this conclusion, the court found that the attorney: (1) notified his client of the plea bargain; (2) explained the terms of the plea agreement; (3) advised his client of the available alternatives to proceeding to trial; (4) presented an opinion concerning the probable outcomes of both the guilt and sentencing phases; (5) advised his client of the strengths and weakness of his case; and (6) allowed his client to make the ultimate decision as to whether the deal would be accepted. Id. at 1110-11.

11

In the instant case, the court finds likewise that Santos did not violate professional standards when he advised Shifflett about her potential plea options. In accordance with Standard 14-3.2(a)-(b), Santos notified Shifflett when he received the plea bargain offer from the United States Attorney and met with her to "read with her" the plea agreement in its entirety. (Resp't Ex. 5). At that meeting, as suggested by Standard 14-3.2(b), Santos also had Shifflett "look at the guideline computations," such that he could advise her of the potential alternatives available to her and the corresponding sentence ramifications of each option. (Resp't Ex. 5; see also Resp't Ex. 13). Then, Santos presented an opinion concerning the strengths and weaknesses of Shifflett's case and the probable outcome of a trial. (Resp't Ex. 5). In advising Shifflett against rejecting the plea agreement, Santos stated that it would be very difficult for Shifflett to prevail at trial, as the United States attorney had already informed him that there were many members of the drug conspiracy that were willing to testify against Shifflett. (Resp't Ex. 5,6). See also Jones, 974 F2.d at 1111 (citing II American Bar Association Standards for Criminal Justice, Standard 4-5.1 ("The lawyer should advise the accused with complete candor concerning all aspects of the case, including a candid estimate of the probable outcome.")).

Following that meeting, Santos kept in close contact with Shifflett over the following months and informed her of any developments in the plea negotiation process. For example, Santos contacted Shifflett after the United States Attorney offered to restructure the plea agreement in such a way that "her husband would get more time in exchange for her getting less." (Resp't Ex. 7). After offering Shifflett his advice and assistance, Santos followed Standard 14-3.2(b) by allowing Shifflett to make the final decision as to whether to accept the plea offer. (Resp't Ex. 10). In this regard, and as explained by the Fourth Circuit in Jones, "various [American Bar Association] Standards [place] upon counsel an affirmative duty to

avoid exerting 'undue influence on the accused's decision' and to 'ensure that the decision . . . is ultimately made by the defendant.'" 947 F.2d at 1111 (citing American Bar Association Standards for Criminal Justice, Standards 4-5.1(b) & 14-3.2(b)). Here, the court finds that Santos adhered to these standards when he vigorously attempted to persuade Shifflett to accept the United States' plea agreement, but accepted her decision to the contrary. Accordingly, and because the court finds no other credible evidence to prove that Santos was constitutionally ineffective in his representation of Shifflett during the plea negotiation process, the court will grant the United States' Motion to Dismiss as to this claim.

### B. Ineffective Assistance of Counsel Ground Two: Insufficient Trial Experience

Shifflett next claims that Santos was unconstitutionally ineffective because he "was inexperienced in federal trials." (Pet'r Am. Mem. of Facts and Law at 5). As evidence of this inexperience, Shifflett contends that Santos failed to investigate her case adequately, failed to "interview or contact [potential] witnesses to determine what facts or testimony they may have had to offer in presenting a defense," (Pet'r Am. Mem. of Facts and Law at 5), "refused to let [Shifflett] take the stand in [her] own defense," (Pet'r Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct at 6), and failed to "present any defense on [her] behalf." (Pet'r Am. Mem. of Facts and Law at 5).

As to this second claim, the court finds that Shifflett has failed to satisfy her burden under Strickland. In coming to this conclusion, the court notes that Santos' prior trial experience—regardless how large or small—does not establish ipso facto whether he was constitutionally ineffective in this case. Kandies v. Polk, 385 F.3d 457, 469 n. 7 (4th Cir. 2004) (vacated on other grounds by Kandies v. Polk, 545 U.S. 1137 (2005)); see also Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993) ("[A]n attorney can render effective assistance of counsel even if he has

13

Case 7:06-cv-00406-JCT-mfu   Document 43   Filed 01/22/09   Page 13 of 16   Pageid#: 261

had little prior experience in criminal cases. 'Whether the defendant has been afforded his right to counsel depends on whether the attorney is reasonably likely to render and does render reasonably effective assistance, not on whether counsel has an extensive background in criminal defense work.'") (citations omitted). To the contrary, "[w]hen considering an ineffective assistance of counsel claim, the attorney's actual performance is examined, rather than his or her experience, which is an indicator of the attorney's likely performance." Kandies, 385 F.3d at 469 n. 7.[5] In the instant case, Shifflett has failed to prove that Santos' actual performance fell "below objective standards of reasonableness." Strickland, 466 U.S. at 687. There is no credible evidence to support any of Shifflett's allegations, and rather, there is ample evidence in the record that directly contradicts her claims.

For example, Shifflett contends that Santos failed to contact or interview any potential witnesses in anticipation of trial. However, according to Santos' written notes and his testimony at the evidentiary hearing, Santos discussed with Shifflett the procedure for subpoenaing potential witnesses, (Pet'r Ex. 6B), and he specifically instructed her to bring potential witnesses to their meetings so he could determine their credibility and usefulness. (Pet'r Ex. 8B). The notes and testimony further indicate that Shifflett repeatedly failed to produce any potential witnesses for Santos to interview, (Pet'r Ex. 8B & 9B), that Santos was "fairly disappointed in this," (Pet'r Ex. 9B), and that when Shifflett finally did bring witnesses to a meeting, Santos determined that their testimony would be "horrible" because they were "unwilling to be specific about the details." (Pet'r Ex. 9B). Santos also noted that the potential witnesses seemed to

---

[5] Even so, it is clear to the court in the instant case that Santos had sufficient trial experience before he undertook the representation of Shifflett. Santos had practiced law for more than ten (10) years and had tried a multitude of criminal cases at both the state and federal level, including a federal murder charge. (Def.'s Motion to Dismiss at Attach. (Aff. of Roland M.L. Santos)).

14

"absolutely fr[ee]ze up when they realize that they could be exposed to criminal prosecution." (Pet'r Ex. 9B).

Similarly, Shifflett also contends that that Santos "refused to let [Shifflett] take the stand in [her] own defense." (Pet'r Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct at 6). According to Santos' written notes and testimony, however, not only did Santos regard Shifflett as "a decent witness" (Pet'r Ex. 9B), he believed that "only her testimony could conceivably avert a certain conviction." (Resp't Motion to Dismiss at Attach. (Aff. of Roland M.L. Santos)). As a result, after informing Shifflett of her constitutional right to refrain from testifying at trial, he "urged" her to waive that right. (Resp't Motion to Dismiss at Attach. (Aff. of Roland M.L. Santos)). Santos then scripted a series of questions for Shifflett to answer while she was on the stand, (Resp't Motion to Dismiss at Attach. (Def's Ex. 4)), and he practiced the questions with her "extensively" prior to trial. (Resp't Motion to Dismiss at Attach. (Aff. of Roland M.L. Santos)). It was only just before Santos called Shifflett to the stand that she informed him that she no longer wanted to testify, and Santos was obligated to accept that decision. Therefore, the court finds that it was Shifflett's own actions—or lack thereof—that led to the deficiencies, if any, in her defense, and thus the court will grant the United States' Motion to Dismiss as to this claim as well.

## IV.

In sum, the court finds that Shifflett has failed to offer sufficient evidence to support either of her claims of ineffective assistance of counsel. Accordingly, the court will grant the United States' Motion to Dismiss (Docket No. 13) and deny Shifflett's Motion to Vacate, Set Aside, or Correct Sentence (Docket No. 1). An appropriate order will be entered this day.

Shifflett is advised that she may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a judge of the circuit court of appeals or this court issues a certificate of appealability pursuant to 28 U.S.C. §2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. §2253(c)(1). Shifflett has failed to demonstrate "a substantial showing of the denial of a constitutional right," and thus this court declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If Shifflett intends to appeal and seek a certificate of appealability from the Circuit Court of Appeals for the Fourth Circuit, her first step is to file a notice of appeal with this court within 60 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Final Order to counsel of record for the Petitioner and Respondent.

**ENTER**: This _22nd_ day of January, 2009.

_James C. Turk_
Hon. James C. Turk
Senior United States District Judge